# IN THE COURT OF APPEALS OF IOWA

————————

No. 26-0313
Filed July 22, 2026

————————

**In the Interest of O.S., O.S., E.S., and D.B., Minor Children,**

**T.S., Father,**
Appellant,

**T.B., Father,**
Appellant.

————————

Appeal from the Iowa District Court for Dubuque County,
The Honorable Thomas J. Straka, Judge.

————————

**AFFIRMED ON BOTH APPEALS**

————————

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,
Dubuque, attorney for appellant father T.S.

Chris Raker, East Dubuque, Illinois, attorney for appellant father T.B.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney
General, attorneys for appellee State.

Kristy L. Hefel of the State Public Defender's Office, Dubuque, attorney
and guardian ad litem for minor children.

————————

Considered without oral argument
by Schumacher, P.J., Langholz, J., and Doyle, S.J.
Opinion by Schumacher, P.J.

**SCHUMACHER, Presiding Judge.**

Two fathers separately appeal the termination of their respective parental rights.[1] T.B. appeals the termination of his parental rights to the eldest child, D.B., born in 2018. T.S. appeals the termination of his parental rights to the youngest three children, E.S., born in 2020, Ol.S., born in 2022, and Od.S., born in 2023. Following our de novo review, we conclude that the record supports a statutory ground for termination as to each child, additional time for reunification is unwarranted for either father, termination is in the best interests of the children, and T.B. has not met his burden for the application of a permissive exception as to D.B. Accordingly, we affirm on both appeals.

## I.      Background Facts & Proceedings

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in February 2024, following an incident of domestic violence between T.B. and the mother when all four young children were present. Founded child abuse assessments were issued and a no-contact order was entered between the parents. T.B. was charged with domestic abuse and two counts of child endangerment. The mother accepted voluntary services from HHS, but over the following six months, HHS reported patterns of methamphetamine use, supervision failures, and suicidality of the mother. This led to the removal of all four children from parental custody in August 2024 and the adjudication of all four children in October 2024.

The 2024 domestic violence incident in the family home was not the first. Since the birth of the eldest child in 2018, there have been twenty-seven

---

[1] The children's mother's parental rights were terminated; she does not appeal.

incidents of criminal conduct in the home which occurred in the presence of at least one child. T.S. has a decade-long history of convictions which resulted in incarceration for domestic violence, drug possession, and other felonies and misdemeanors. T.B. also has a decade-long history of domestic violence and other criminal charges. Each time there was a domestic violence event at the family home, the mother was granted a no-contact order. But such orders were routinely dropped, and a relationship would resume until the next domestic violence incident occurred.

Both fathers were incarcerated for most of the child in need of assistance proceedings. The termination hearing occurred over two days in October and November 2025, over a year after the removal from parental custody. Both fathers testified at the hearing and reported consistent contact with the children over video or phone calls while incarcerated.[2] At the time of the termination hearing, T.B. was still incarcerated and awaiting a parole hearing.[3] T.S. had been released from prison one month prior to the hearing and was residing in a sober living house where the children were unable to reside. Upon his release, T.S. began attending in-person visitations and spending overnights or weekends with the children when they were at his mother's home. T.S. also resumed a relationship with the children's mother upon his release from prison.

At the time of the termination hearing, the children remained out of the home and there had not been any return to parental custody since removal. D.B. lives in one placement, E.S. and Ol.S. live together in another placement, and Od.S. lives in a third placement. D.B. and E.S. have both been

---

[2] T.S. appeared in person at the hearing, while T.B. appeared telephonically.

[3] Prior to filing the termination order, the court reopened the record and received evidence that T.B. was released from prison and moved to a half-way house.

diagnosed with autism and attend therapy and other services. Both require ongoing treatment. The guardian ad litem (GAL) reported the progress each child had made in their foster homes, noting E.S. and Ol.S. were excelling in school, D.B. had begun to relax and open up to his foster family, and Od.S. had started learning to speak.[4]

The HHS case manager testified that she continued to have "significant concerns about ongoing domestic violence between [T.S. and the mother]" and believed it would take a "significant period of time . . . before any of these children could be reunited with any parent." She also noted that HHS would need to see "the history of domestic violence . . . be changed and that cycle stopped" before they could allow any of the parents to regain custody of the children. When asked about her lasting concerns regarding the parents, she said she worried about either father's "ability to keep their children safe." The GAL also voiced concern that T.S. and the mother had resumed their relationship, raising concerns about the cycle of domestic violence.

Following the hearing, the court entered an order terminating the respective parents' parental rights to all four children. The two fathers appeal separately.

## II.    Analysis

We review de novo the termination of parental rights. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We use a three-step analysis: first, we determine if a ground for termination exists under Iowa Code section 232.116(1); next,

---

[4] Each child had a permanency plan in place through HHS—the three youngest children were to be adopted by T.S.'s mother and D.B. was to be adopted by the mother of T.B.'s other son.

we apply the best-interests framework from paragraph (2); finally, "we consider whether any exceptions" from paragraph (3) "apply to preclude termination." *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018).

### A. Grounds for Termination

T.B.'s parental rights were terminated pursuant to Iowa Code section 232.116(1)(f) (2025). This paragraph permits termination when the district court "finds that all of the following have occurred": (1) the children are "four years of age or older"; (2) the children have been adjudicated in need of assistance; (3) the children have been removed from the custody of the "parents for at least twelve of the last eighteen months"; and (4) clear and convincing evidence shows the children cannot be safely returned to the custody of the parents. Iowa Code § 232.116(1)(f).

T.B. argues that the State did not prove termination by clear and convincing evidence. Specifically, the father argues that the district court "erred in failing to consider [his] change of correctional circumstances." He highlights that although he was incarcerated at the termination hearing, he had been paroled by the time the district court filed the termination order. Subsection 232.116(1)(f)(4) requires the district court to find that "at the present time the child cannot be returned to the custody of the child's parents." During the termination hearing, T.B. was incarcerated and acknowledged that the children could not be placed with him at that time. And although he was later released to a half-way house, the children could also not be placed in this environment. Clear and convincing evidence exists in this record as required under subsection 232.116(1)(f)(4).

T.S. makes the same challenge to the termination of his parental rights under Iowa Code section 232.116(1)(h). Under this paragraph, termination is proper when (1) the children are "three years of age or younger"; (2) the

children have "been adjudicated a[s] child[ren] in need of assistance"; (3) the children have been removed from the custody of the "parents for at least six months of the last twelve months"; and (4) "[t]here is clear and convincing evidence" the children "cannot be returned to the custody of the child[ren]'s parents . . . at the present time." Iowa Code § 232.116(1)(h) (cleaned up).

T.S. was residing in a sober living home at the time of the termination hearing. While this is not as restrictive as incarceration, he testified that the children could not live with him. At the time of the termination hearing, T.S. was unable to resume custody of the children.

The grounds for termination of T.S.'s and T.B.'s parental rights are supported by clear and convincing evidence in this record.

### B. Six-Month Extension

Both fathers requested a six-month extension for reunification efforts. To grant an extension, the district court must "enumerate the specific factors, conditions, or expected behavioral changes" that would provide the basis for the court to conclude that the children would be able to return to the custody of the parent at the end of the six-month period. Iowa Code § 232.104(2)(b).

At the time of the termination hearing, T.S. had not been fully released from supervision. In his testimony, T.S. stated that he had requested placement in the sober living home because he did not believe "straight parole . . . would be in [his] best interest." T.B. was living under full supervision at the time of the termination hearing and was subsequently placed in a half-way house.

We are unable to discern any specific factors, conditions, or expected behavioral changes that would allow the children to be able to return to their respective fathers at the end of an extension of time. These children had been at risk during years of domestic violence incidents occurring in the family home, and those risks have not been addressed. The HHS case manager said this would take a "significant period of time with consistent participation services" to prove. "Children should not be forced to wait for their parents to be able to care for them." *In re A.G.R.*, No. 06-1171, 2006 WL 2561206, at *2 (Iowa Ct. App. Sep. 7, 2006). With no evidence at the time of the hearing that either father would be able to maintain the necessary changes to show that the children would not be subjected to the same conditions that led to HHS's involvement with the family, we conclude an extension of time is unwarranted.

## C. Best Interests

Termination must also serve the best interests of the children. To determine best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

T.S. contends that termination is not in the children's best interests because of the strong parent-child bond and because he "was actively making steady and direct progress toward reunification." While incarcerated, T.S. participated in a plethora of programs aimed at resume building, mental health, anger management, and maintaining sobriety. He had consistently attended substance-use meetings and completed job certifications. He also obtained and maintained a full-time job immediately following his release from prison. These efforts, while laudable, do not adequately address the

primary concerns of domestic violence which led to HHS's involvement with the family.

As it pertains to T.S., it is clear that the children love their father. T.S. has been consistent in finding ways to show attention to them while incarcerated and even more so after his release from prison. Despite this, we conclude that termination is in the children's best interests. While T.S. cares deeply about his children, that is not enough to overcome the very significant concerns that still exist.

T.B. asserts that the district court's failure to consider his progress made after his release from prison "denies a complete and full evaluation of the best interests of the child." At the time of the termination hearing, however, the children had been removed from the family home for fifteen months. During that time, D.B. had progressed and received treatment for his autism diagnosis. D.B. had made significant advances in socializing and becoming more active. Further, T.B. testified at the termination hearing that he had been incarcerated for much of D.B.'s life and that D.B. had never lived with him full-time. Because of D.B.'s diagnosis, he will require special care and attention throughout his life.

The children have all established strong bonds and relationships in their foster homes. The youngest child, Od.S., has grown, learned to speak, and learned to interact in his foster home. D.B., Ol.S., and E.S. are flourishing under the care of their current placements. Ol.S. and E.S are excelling socially and academically at school.

A child's safety is one of our paramount concerns when determining a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J.,

concurring specially). Upon our review, we concur with the court's finding that termination is in the best interests of the children.

**D. Exceptions to Termination**

Once the State has proven grounds for termination, the burden to prove a permissive exception applies under section 232.116(3) rests with the parent asserting the exception.[5] *In re A.S.*, 906 N.W.2d at 476.

T.B. argues that his efforts to "deepen the bond" with D.B. were not considered by the district court and that this permissive exception should have applied to preclude termination. *See* Iowa Code § 232.113(3)(c). The HHS case manager acknowledged the efforts T.B. made to stay in touch with D.B. but ultimately stated that "[T.B.'s] choices put him in prison for the duration of this case. And so there really hasn't been an ability, and there won't be in the near future, for him to . . . demonstrate his ability to parent [D.B.] right now. He's not able to."

Application of the exception under paragraph (c) "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (citation omitted). On this record, we cannot conclude that termination of T.B.'s parental rights is detrimental to the child.

We affirm the termination of parental rights as to both fathers.

**AFFIRMED ON BOTH APPEALS.**

---

[5] T.S. does not raise a challenge under this subsection.